LAURA M. HALL et al., Appellants, v. M. B. O'REILLY REALTY & INVESTMENT COMPANY et al.

Division One, December 30, 1924.

1. **OR HEIRS: Words of Limitation or Purchase.** A trust agreement providing that the stock of a corporation was to be held by the trustee "in escrow as a trust fund, first, for the benefit of the creditors" of the corporation, "and, second, for the benefit of Mary C. O'Reilly or her heirs," and that "after all the creditors have been fully paid and satisfied then said trustee shall deliver the said stock to her or to her heirs," is effective, upon the death of Mary C., to vest in her heirs whatever interest she had in the stock. The words "or her heirs" are not words of limitation, but words of purchase; and the word "and" is not to be substituted for the word "or."

2. ————: ————: **Subject to Right of Creditors: Legal Title: Beneficial Interest: Power to Devise.** Where the trust agreement provided that the stock of a corporation was to be held by the trustee, in escrow as a trust fund, first, for the benefit of its creditors, and next for the benefit of Mary C. O'Reilly or her heirs, and after all the creditors have been fully paid and satisfied "then said trustee shall deliver the said stock to her or her heirs," the legal title to the stock went to the trustee, and the beneficial interest therein remained in Mary C. until her death, subject to the rights and interests of the creditors, which are not rights and interests in the stock, but in the assets and profits until their claims are paid. Upon her death the beneficial interest in the stock went to her heirs, and their right to the legal title is postponed until the creditors are paid. She had no right to devise the beneficial interest, because the trust agreement unconditionally required the trustee to hold the stock, subject to the creditors' rights, for the

Hall v. O'Reilly Realty & Inv. Co.

benefit of her heirs, commencing at her death, in case she died before the creditors were paid, and after her death the trustee held for their benefit.

3. **CORPORATION: Right of Beneficial Stockholders to Sue: Dissipation of Assets.** The owners of a beneficial interest in stock, transferred to a trustee to be held as a trust fund for the benefit of creditors, have a right, as equitable owners, to maintain a suit, in a court of equity, against the corporation and its directors, to redress and prevent a dissipation of its assets.

4. ——: ——: ——: **Trustee: Sufficient Pleading.** The owners of the beneficial interest in stock, transferred to a trustee to be held in escrow as a trust fund for the benefit of the corporation's creditors, being empowered to sue to redress or prevent the dissipation of assets, may make the trustee, who refuses to sue to protect the trust property, a party, and maintain a suit to redress and prevent such dissipation in their own names, and an allegation in their petition that he has "failed and refused" to sue is sufficient, as against a general demurrer, to show a demand and refusal.

5. ——: ——: ——: **Contingent Interest.** Where all the stock of a corporation was transferred by a trust agreement to a trustee to be held by him for the benefit of its creditors, except three shares which the agreement provided were to be held by three several stockholders in order that they might qualify as directors and maintain the corporation's legal existence, two of whom dominate the board and have been guilty of malfeasance and are dissipating its assets for their own personal benefit, the owners of the beneficial interest in all the other stock, the trustee refusing to sue, have a right, as equitable owners, to maintain a suit in equity against the company, the directors and the trustees, to redress such wrongs and to prevent further dissipation, even though the creditors have not been paid, and their interest will continue to be contingent until the creditors are paid. In such case the directors' actual interest in the three shares held by them is precisely the same as the interests of the beneficial owners of the other shares; and there being no outstanding stock, and the whole class of stockholders being in court, equity ought not to hear an objection that the ownership of the stock is not actual, but only contingent, for such objection implies that, in such circumstances, there is no remedy.

6. ——: ——: ——: **Demand.** The general rule is that a stockholder must, in good faith, exhaust his remedies within the corporation, but no demand upon directors is necessary where it would be futile; and where a trust agreement, transferring stock of a

corporation to a trustee to be held as a trust fund for the benefit of its creditors and to pay its debts, names the directors who are to keep alive and conduct the corporation, and a majority of them are in control and are wasting and appropriating to their own use its assets, and the trustee has been applied to and refuses to act, the court should not permit the directors to bring and control a suit, in effect, against themselves, but should entertain a suit, to redress the wrongs and prevent further dissipation, brought by the remaining stockholders, against the corporation, the directors and the trustee.

7. ———: ———: ———:. Removal of Trustee: Remedy: Pleading. Requests in the petition for the removal of the trustee, to whom has been transferred stock to be held as a trust fund for the benefit of creditors of the corporation, without allegation and evidence that he has participated with the directors in the dissipation and appropriation by the directors of its assets, do not go to the insufficiency of the stockholders' petition, but pertains to a matter of remedy.

Citations to Headnotes: 1 to 5, Trusts, 39 Cyc. 228, 231, 448, 459; 6, Corporations, 14a C. J. par. 1936, and Trusts, 39 Cyc. 448; 7, Trusts, 39 Cyc. 268.

Appeal from St. Louis City Circuit Court.—*Hon. Moses Hartmann,* Judge.

REVERSED AND REMANDED.

*Taylor, Chasnoff & Wilson* and *Hugo Monnig, Jr.,* for appellants.

(1) The words, "or her heirs," as used in the trust agreement mentioned in appellants' second amended petition, are words of purchase and not of limitation. Eckle v. Ryland, 256 Mo. 424. (2) The beneficial owners of corporate stock, the legal title to which is held by a trustee, may maintain a stockholders' bill, where the trustee fails and refuses to maintain the suit, by joining the trustee as a party defendant. Fisher v. Patton, 134 Mo. 32; Baum v. Sporborg, 131 N. Y. Supp. 267.

*Kinealy & Kinealy* and *George T. Desloge* for respondents.

(1) Ordinarily suits to redress corporate wrongs must be brought in the name of the corporation by the directors. 14 C. J. p. 875, sec. 1334; Vogeler v. Punch, 205 Mo. 558. (2) Where the directors are alleged to be the wrongdoers, the suit in a proper case may be brought by a stockholder, but he must be an actual owner of the stock at the time. Barnett v. Ground, 304 Mo. 593; 14 C. J. p. 874, sec. 1333; 6 Fletcher on Corp. p. 6889, sec. 4058; 4 Thompson on Corp. p. 1086, sec. 4630; Cantwell v. Lead Co., 199 Mo. 1; Hingston v. Montgomery, 121 Mo. App. 451; Roebling v. First Nat. Bank, 30 Fed. 744. (3) Before suit by a stockholder can be maintained, demand on the directors and refusal to right the wrong must be alleged and proven. 14 C. J. p. 879, sec. 1339; Canada v. Daniel, 175 Mo. App. 55; Thompson v. Stearns, 197 Mo. App. 344. (4) Where the title to the stock is vested in a trustee, he is the one to vote it and to bring all suits based upon ownership of the stock. R. S. 1919, sec. 10156; 39 Cyc. 446, tit. Trusts; Morrow v. Morrow, 113 Mo. App. 454; Whitaker v. Whitaker Iron Co., 238 Fed. 980. (5) The use in the trust agreement of the words "or her heirs" are words of limitation and not of purchase. 29 Cyc. 1505; Bouvier's Law Dictionary; Maguire v. Moore, 108 Mo. 273; Eckle v. Ryland, 256 Mo. 449; Garrett v. Wiltse, 252 Mo. 710. (6) The trustee cannot be deprived of his right to represent the trust stock except for some wrong conduct on his part. Shelton v. King, 229 U. S. 95; Easton v. De Muth, 179 Mo. App. 722; Wiegand v. Woerner, 155 Mo. App. 264. (7) Courts of equity will not dissolve a trust as long as its provisions may be carried out. Easton v. De Muth, 179 Mo. App. 728; Stevens v. De La Vaulx, 166 Mo. 20; Heady v. Crouse, 203 Mo. 100; McConnell v. Deal, 296 Mo. 275.

JAMES T. BLAIR, P. J.—This is an appeal from a judgment rendered against appellants following their declination to plead further after the trial court had sustained a demurrer to their amended petition. That

petition (omitting caption and signatures) first states that plaintiffs Laura H. Hall and Charles F. O'Reilly and defendants Gerald B. O'Reilly, Joseph M. O'Reilly, Eugene B. O'Reilly and Louis B. O'Reilly are the only surviving children of Mary C. O'Reilly, and the other individual plaintiffs and defendants, except the trustee, Robert L. McLaran, are the surviving grandchildren of Mary C. O'Reilly, the children of daughters who predeceased her. Three of the grandchildren are minors and appear by guardian or next friend. The petition then proceeds:

"Plaintiffs further state that on and prior to the 24th day of June, 1915, M. B. O'Reilly Realty & Investment Company was a going concern, successfully engaged in general real estate business in and near the city of St. Louis, Missouri; that it had a large clientele, and had the confidence of owners, buyers and sellers of real estate; that it had many clients for whom it managed properties, collected rents and negotiated loans, and many clients who were accustomed to making and who made investments in real estate and in real estate loans through it; that it had a repair department which supervised the making of repairs on improvements on real estate, belonging to its clients, and an insurance department, which placed insurance for its clients; that it had many clients who listed properties with it for sale, and that it itself owned numerous parcels of real estate in and about the city of St. Louis, Missouri; and that it had a considerable income from its clients, resulting from the foregoing and other activities of said company.

"That on said 24th day of June, 1915, said defendant corporation had a capital stock authorized, issued and outstanding of $100,000, consisting of shares of stock of the par value of $100 each, all of which stock then belonged to said Mary C. O'Reilly, but which with the exception of one share was then in the names of defendants Gerald B. O'Reilly and Joseph M. O'Reilly, one share being in the name of Eugene D. O'Reilly; that

on or about the 24th day of June, 1915, a contract was entered into as of said date by and between defendants, Gerald B. O'Reilly and Joseph M. O'Reilly, as parties of the first part, and Mary C. O'Reilly, as party of the second part, and M. B. O'Reilly Realty & Investment Company, as party of the third part, and defendant Eugene D. O'Reilly, as party of the fourth part, whereby the parties of the first part, among other things, agreed to convey to Robert L. McLaran, as trustee, all the shares of stock of said M. B. O'Reilly Realty & Investment Company, except three shares of stock, which it was agreed should be nominally held to qualify three directors. Said stock so agreed to be conveyed to be held by said trustee 'in escrow as a trust fund, first for the benefit of the creditors' (of the M. B. O'Reilly Realty & Investment Company), 'and, second, for the benefit of Mary C. O'Reilly or her heirs.' Said agreement further provided that 'after all the creditors of said M. B. O'Reilly Realty & Investment Company have been fully paid and satisfied, then said trustee shall deliver the said stock to her or to her heirs and M. B. O'Reilly Realty & Investment Company shall cease active business, and the good will of said M. B. O'Reilly Realty & Investment Company shall inure to the benefit of said Gerald B. O'Reilly, Joseph M. O'Reilly and Eugene D. O'Reilly.'

"By the terms of said agreement it was contemplated that said corporation should be liquidated and until it was liquidated that it would enjoy the good will which it had theretofore created; that upon liquidation the creditors of said corporation were first to be paid, and the surplus assets, with the exception of the good will, were to belong to Mary C. O'Reilly, or in event she should die before liquidation then to her heirs, and that only after the affairs and finances of said corporation were fully liquidated, as above, was the good will of said corporation to inure to the benefit of said Gerald B. O'Reilly, Joseph M. O'Reilly and Eugene D. O'Reilly.

"Said agreement further provided that defendants, Gerald B. O'Reilly, Joseph M. O'Reilly and Eugene D. O'Reilly, should qualify or continue as directors and should control, operate and manage the business of the M. B. O'Reilly Realty & Investment Company as a going concern. That said directors should unanimously agree upon salaries amongst themselves, to be fixed from year to year, but that in no event should said salaries be greater than those then paid until all the creditors of the M. B. O'Reilly Realty & Investment Company should first be paid off and satisfied.

"Defendants Gerald B. O'Reilly and Joseph M. O'Reilly further agreed that 'all their operations, dealings and profits in real estate while connected with the M. B. O'Reilly Realty & Investment Company (except their private holdings or operations while connected with the M. B. O'Reilly Realty & Investment Company, if any) shall inure to the benefit of said M. B. O'Reilly Realty & Investment Company.'

"Plaintiffs further state that pursuant to said agreement all of the stock of said M. B. O'Reilly Realty & Investment Company was transferred to Robert L. McLaran, as trustee under said agreement, except that three shares remained in the names of Gerald B. O'Reilly, Joseph M. O'Reilly and Eugene D. O'Reilly, respectively. That defendants Gerald B. O'Reilly and Joseph M. O'Reilly, who were then directors of said defendant corporation, continued to act as such and that Eugene D. O'Reilly qualified and for a time acted as a director of said corporation.

"Plaintiffs further state that they and the individual defendants herein, except defendant Robert L McLaran, are the heirs of Mary C. O'Reilly, and that there are no other heirs of Mary C. O'Reilly who survived her at her death, and that she left no other heirs surviving her.

"Plaintiffs further state that for a time defendants Gerald B. O'Reilly, Joseph M. O'Reilly and Eugene D.

O'Reilly conducted the business of said corporation as a going concern, but that thereafter defendants Gerald B. and Joseph M. O'Reilly conspired together to convert to their own use the good will and clientele of said M. B. O'Reilly Realty & Investment Company and to convert to their own use all or a portion of the assets of the said M. B. O'Reilly Realty & Investment Company, without waiting for the performance of the conditions under which the same were to inure to their benefit, as, provided in said agreement of June 24, 1915, and pursuant to said conspiracy said Gerald B. and Joseph M. O'Reilly began to transact business in the name of the G. B. & J. M. O'Reilly Real Estate Mortgage Co., which corporation theretofore had not actively engaged in the general real estate business, and had not engaged in the business in which the said M. B. O'Reilly Realty and Investment Company was engaged.

"And said defendants Gerald B. and Joseph M. O'Reilly caused said G. B. & J. M. O'Reilly Real Estate Mortgage Co. gradually to take over the clientele of said M. B. O'Reilly Realty & Investment Company, and turned over to said G. B. & J. M. O'Reilly Real Estate Mortgage Co. the collection of rents for clients of said M. B. O'Reilly Realty & Investment Company, and had said G. B. & J. M. O'Reilly Real Estate Mortgage Co. conduct the sales and purchases of property for clients of said M. B. O'Reilly Realty & Investment Company, and appropriated to the G. B. & J. M. O'Reilly Real Estate Mortgage Co. the commissions earned as a result of making such sales, and deprived the M. B. O'Reilly Realty & Investment Company of all such commissions, without consideration.

"And said defendants Gerald B. and Joseph M. O'Reilly had said G. B. & J. M. O'Reilly Real Estate Mortgage Co. begin and continue to supervise the making of repairs on improvements of real estate which had been placed with M. B. O'Reilly Realty & Investment Company for supervision, and gradually turned over

to said G. B. & J. M. O'Reilly Real Estate Mortgage Co. the repair department of said M. B. O'Reilly Realty & Investment Company, with the result that said M. B. O'Reilly Realty & Investment Company was deprived of the profits and commissions resulting from the maintenance of such department, without consiaeration.

"And said defendants Gerald B. and Joseph M. O'Reilly began and continued to turn over to said G. B. & J. M. O'Reilly Real Estate Mortgage Co. the handling of insurance for clients of said M. B. O'Reilly Realty & Investment Company, with the result that the said M. B. O'Reilly Realty & Investment Company was deprived of the profits and commissions of said department, and same were appropriated by said G. B. & J. M. O'Reilly Real Estate Mortgage Co., without consideration.

"And said defendants Gerald B. and Joseph M. O'Reilly further negotiated loans not only for clients of said M. B. O'Reilly Realty & Investment Company, which loans should have been negotiated by said last-named company, but pretending that it was necessary for said M. B. O'Reilly Realty & Investment Company to borrow money, said defendants negotiated loans for said M. B. O'Reilly Realty & Investment Company through their said G. B. & J. M. Real Estate and Mortgage Co., charging commissions therefor, with the result that said M. B. 'O'Reilly Realty & Investment Company was not only deprived of the commissions which it would have earned in conducting negotiations for loans for its own clients, but was compelled to pay commissions to said G. B. & J. M. O'Reilly Real Estate Mortgage Co., when under the terms of said contract of June 24, 1915, it was the duty of said defendants to negotiate said loans, if needed by said M. B. O'Reilly Realty & Investment Company, without charging commissions therefor, and with the result that such commissions for negotiating loans not only for said M. B. O'Reilly Realty & Investment Company, but for its clients, were indirectly appropriated by said defendants, Gerald B. and Joseph M. O'Reilly.

"Plaintiffs further state that said G. B. & J. M. O'Reilly Real Estate Mortgage Co., while a corporation, in fact had as its sole stockholders said defendants Gerald B. and Joseph M. O' Reilly, and that by appropriating the good will and clientele of said M. B. O'Reilly Realty & Investment Company and turning the same over to said G. B. & J. M. O'Reilly Real Estate Mortgage Co. said defendants were not only acting in violation of said contract, but were unfaithful to said M. B. O'Reilly Realty & Investment Company, of which the said Gerald B. and Joseph M. O'Reilly were directors, and as a result of the actions of said defendants Gerald B. and Joseph M. O'Reilly, as above set forth, the creditors of said M. B. O'Reilly Realty & Investment Company have not been paid off and the assets of said corporation have been depleted and the rights of these plaintiffs thereby violated.

"And said plaintiffs further state that if the profits of the business of M. B. O'Reilly Realty & Investment Company had not been diverted as aforesaid by said defendants Gerald B. and Joseph M. O'Reilly, there would be ample assets not only to liquidate the indebtedness of all creditors of said M. B. O'Reilly Realty & Investment Company, but there would be a considerable balance on hand for distribution to them as the beneficial owners of the stock in said company, but that due to the actions of said defendants, Gerald B. and Joseph M. O'Reilly, as aforesaid, the assets of said M. B. O'Reilly Realty & Investment Company have been so depleted that they are not now more than sufficient to pay off creditors.

"Plaintiffs further state that defendant Robert L. McLaran has failed and refused to take any action against said other individual defendants to compel them to carry out their duties and obligations under said contract hereinbefore set forth, and has failed to take any action to compel said individual defendants to restore to said M. B. O'Reilly Realty & Investment Company the assets of said company, which have been di-

verted and misappropriated by said other individual defendants, as hereinbefore set forth, and has failed to compel said individual defendants, as directors of said M. B. O'Reilly Realty & Investment Company, to account for the value of the assets and property so misappropriated and diverted.

"Wherefore, these plaintiffs pray the court for an order against the said Gerald B. and Joseph M. O'Reilly enjoining them from further transferring or attempting to transfer the good will or clientele of said M. B. O'Reilly Realty & Investment Company to themselves, directly or indirectly, through some other corporation, and for an order removing said Gerald B. and Joseph M. O'Reilly as directors and officers of said M. B. O'Reilly Realty & Investment Company and enjoining them from acting as such until further order of this court, and for an order compelling the said Gerald B. and Joseph M. O'Reilly to account to said M. B. O'Reilly Realty & Investment Company for the value of the assets and property of said M. B. O'Reilly Realty & Investment Company heretofore misappropriated by said defendants.

"And these plaintiffs further pray the court to appoint a receiver to take charge of the assets and properties of the M. B. O'Reilly Realty & Investment Company and to instruct said receiver to proceed to bring such suits as may be necessary against G. B. & J. M. O'Reilly Real Estate Mortgage Co. to compel it to account to said M. B. O'Reilly Realty & Investment Company for such property and assets of M. B. O'Reilly Realty & Investment Company as have been unlawfully appropriated by said G. B. & J. M. O'Reilly Real Estate Mortgage Co. to its use. And to compel said G. B. & J. M. O'Reilly Real Estate Mortgage Co. to account to M. B. O'Reilly Realty & Investment Company for the profits resulting to it from its appropriation of the good will and assets of said M. B. O'Reilly Realty & Investment Company, and with power in said receiver to liquidate the assets and business of said company and to wind up its business."

The demurrer need not be set out, since there is no contention it was not sufficient to raise the questions now presented.

Respondents contended in the trial court (1) that the words "or her heirs" in the trust agreement which were used in the clause of the trust agreement which provided that the stock should be held for "Mary C. O'Reilly *or* her heirs" are words of limitation and not of purchase and, since it is alleged Mary C. O'Reilly is dead and there is no allegation that she died intestate, "her heirs have no standing to maintain this suit, as she may have left a will bequeathing this stock to other persons;" and (2) that, in any event, the petition shows the heirs of Mary C. O'Reilly are merely beneficial owners of the stock and do not have the legal title, and have no standing to maintain this suit; that if it can be maintained at all, it must be by Robert L. McLaran, the trustee. Respondents further contend that ordinarily a suit to redress corporate wrongs must be brought in the name of the corporation; that, in case directors are alleged to be the wrongdoers, the suit may be brought by a stockholder, but he "must be an actual owner of stock at the time, and must show a demand on the directors and a refusal by them to right the wrong;" the trustee cannot be "deprived of his right to represent the stock except for some wrong conduct on his part," and "equity will not dissolve a trust as long as its provisions may be carried out." These are the questions discussed in the briefs.

I. The petition alleges the trust agreement provides that the stock was to be held by the trustee "in escrow as a trust fund, first, for the benefit of the creditors" (of the M. B. O'Reilly Realty & Investment Company) "and, second, for the benefit of Mary C. O'Reilly Or Heirs: or her heirs," and further provides that "after Words of Purchase. all the creditors of said M. B. O'Reilly Realty & Investment Company have been fully paid and satisfied, then said trustee shall deliver the said

stock to her (Mary C. O'Reilly) or to her heirs,'' etc. A deed to a named person ''or his heirs'' is effective, in many circumstances, to convey land to the named person if living and, if he is dead, to his heirs. [Matthews v. Greer, 260 S. W. (Mo.) l. c. 54, and cases cited.] In this case, as in Eckle v. Ryland, 256 Mo. l. c. 446 et seq., the context points to the use of the word ''heirs'' as a word of purchase and not of limitation. The time fixed for reconveyance of the legal title was made to depend upon a hearing, the time of the occurrence of which could not be definitely fixed. Whether she then would be living was a natural question in the mind of Mary C. O'Reilly. She provided a grantee in either event. This is not a case in which the court would be justified in substituting the word ''and'' for the word ''or'' in the clause in question, as respondents seem to contend.

II.   Under the trust agreement the legal title to the stock went to the trustee, and the beneficial interest therein remained in Mary C. O'Reilly until her death,

Legal Title: Beneficial " Interest: Right to Devise.

subject to the rights and interests of the creditors, which are not rights and interests in the stock, but in the assets and profits until their claims are paid. Their interests resemble those of mortgagees. At Mary C. O'Reilly's death the beneficial interest in the stock went to her heirs, and their right to the legal title to the stock was postponed until the creditors were paid. She had no right to devise the beneficial interest, because the trust agreement unconditionally required the trustee to hold the stock, subject to the creditors' rights, ''for the benefit of'' the heirs of Mary C. O'Reilly, commencing at her death, in case she died before the creditors were paid. After her death the trustee held for their benefit. Their right to legal title could not accrue until the creditors were paid, but their beneficial interest, by force of the trust agreement, began at the death of Mary C. O'Reilly.

III.   So far as concerns the sufficiency of appellants' stock ownership to enable them to maintain a suit to

redress or prevent the dissipation of the corporate as-
sets, it is to be remembered that this is a
**Right to Sue.** suit in equity, and, in such case, the right of
an equitable owner to sue has been expressly upheld by
this court. [Fisher v. Patton, 134 Mo. l. c. 54.] The doc-
trine is approved in Great Western Ry. v. Rushout, 5 De
Gex & Sm. l. c. 307, and by Fletcher's Cyclopædia of the
Law of Private Corporations, vol. 6, p. 6890, sec. 4058.

IV. The trustee is made a party, and the petition
alleges he has failed and refused to sue. It is not denied
that an owner, empowered to sue, may make a trustee,
who refuses to sue to protect the trust property, a party
and then maintain a suit like this in his own name, but
it is argued the allegation that the trustee has "failed
and refused" to sue is insufficient to show a demand
and refusal. The allegation is good as against a general
demurrer, such as was filed in this case.

V. But let it be conceded that the interest of appel-
lants is contingent and that under the trust agreement
Mary C. O'Reilly had nothing and appellants have noth-
ing except a contingent interest dependent
**Contingent** upon surviving the time of the payment of
**Interest.** creditors. It should be held, nevertheless,
that such an interest would support a suit to prevent the
methodical dissipation of the corporate assets, if other
conditions precedent are present. This is a singular
case. There is no outstanding stock except that held
by the trustee and the three shares used to qualify the
directors, a majority of whom dominate the board and
are the ones charged with malfeasance. The directors'
actual interest in the three shares they hold is precisely
the same in character as the interests of the other heirs.
All interests in all the stock are contingent if any is so.
The rest of the stock is in the hands of the trustee who
refuses to sue, according to the petition. It is, on the
assumption first made, a case in which the owners of
contingent interests, if contingent they be, must sue or
no suit can be brought to protect the corporation, unless

reliance is to be placed upon the minority director who has one share in his name, but has no actual ownership in it different in character from the ownership of all the living heirs in every share. In such circumstances equity ought not to hear an objection that the stock ownership is not actual, but merely contingent. The whole class is in court and some way to protect the property is needed, if the allegations are true. If this suit cannot be maintained on that sort of an interest, then a way has been found whereby corporate stock can be so lodged that no one interested in any way in the corporate stock can move to protect the property by a stockholders' or stock owners' suit.

VI. The general rule is that a stockholder must, in good faith, exhaust his remedies within the corporation, but no demand upon the directors or stockholders is necessary where it is shown it would be futile. [Loomis v. Railway, 165 Mo. 1. c. 488.] The petition brings this case within the exception. The trust agreement names the directors who are to conduct the corporation. A majority of these are in control, and it is alleged, are wasting and appropriating to their own use the assets of the corporation.. No appeal to the stockholders, in the ordinary sense, is possible, since the stock, all but three shares, is held in trust and the trustee has been applied to and has refused to act. The court ought not, if the allegations are true, to permit the majority of directors to bring and control a suit practically against themselves, even if they would do so, and the trustee will not sue. The showing is sufficient as against respondents' objection on this score. [Loomis v. Railway, supra; 6 Fletchers' Cyc. Law of Private Corp., p. 6943, sec. 4070; Fleming and Hewins v. Warrior Copper Co., 136 Pac. (Ariz.) 273, 51 L. R. A. (N. S.) 99, and note; Hingston v. Montgomery, 121 Mo. App. 1. c. 458.]

VII. So far as concerns the argument that the trustee ought not to be removed without an allegation

and evidence that he participates in the alleged wrong-doing, that is a matter of the remedy and does not go to the insufficiency of the petition.

VIII.  The right of a beneficial owner of the stock of a corporation to proceed for a receiver under general equity powers has not been argued.  The case has been presented on the theory discussed.

The judgment ought to be reversed and the cause remanded for further proceedings.  All concur.