Rosa Bell **WILLSON**

v.

The **UNITED STATES.**

No. 64–61.

United States Court of Claims.
April 16, 1965.

T. Raber Taylor, Denver, Colo., for plaintiff.

Joseph P. Spellman, Washington, D. C., with whom was Asst. Atty. Gen. Louis F. Oberdorfer, for defendant. Edward S. Smith, C. Moxley Featherston, Lyle M. Turner, and Philip R. Miller, Washington, D. C., on the briefs.

Before LARAMORE, Acting Chief Judge, DURFEE, DAVIS and COLLINS, Judges, and WHITAKER, Senior Judge.

LARAMORE, Judge.

This is an action brought by the surviving spouse of Alexander J. Chandler, deceased, for the refund of estate taxes in the amount of $45,023.42, allegedly attributable to the erroneous disallowance of a marital deduction applicable to a part of decedent's trust estate. The question presented is whether part of the interest in property passing to the surviving spouse under decedent's trust satisfies the requirements of section 812(e) (1)(F) of the 1939 Code, as amended by section 93 of the Technical Amendments Act of 1958,[1] and thus qualify as a "de-

---

1. Section 812(e) (1) (F) of the Internal Revenue Code of 1939, as amended by section 93(a) of the Technical Amendments Act of 1958, 72 Stat. 1606, 1668, provides as follows:

"(F) LIFE ESTATE WITH POWER OF APPOINTMENT IN SURVIVING SPOUSE.—In the case of an interest in property passing from the decedent, if his surviving spouse is entitled for life to all the income from the entire interest, or all the income from a specific portion thereof, payable annually or at more frequent intervals, with power in the surviving spouse to appoint the entire interest, or such specific portion (exercisable in favor of such surviving spouse, or of the estate of such surviving spouse, or in favor of either, whether or not in each case the power is exercisable in favor of others), and with no power in any other person to appoint any part of the interest, or such specific portion, to any person other than the surviving spouse—

"(i) the interest or such portion thereof so passing shall, for purposes of subparagraph (A), be considered as passing to the surviving spouse, and

"(ii) no part of the interest so passing shall, for purposes of subparagraph (B) (i), be considered as passing to any person other than the surviving spouse.

"This subparagraph shall apply only if such power in the surviving spouse to appoint the entire interest, or such specific portion thereof, whether exercisable by will or during life, is exercisable by such spouse alone and in all events."

Section 93(b) of the 1958 Act provided:

"(b) *Effective Date.*—The amendment made by subsection (a) shall apply with respect to estates of decedents dying after April 1, 1948, and before August 17, 1954. If refund or credit of any overpayment resulting from the application of such amendment is prevented on the date of the enactment of this Act, or

ductible interest" for purposes of the marital deduction.

Since 1948, subsection 812(e)(1)(A) of the Internal Revenue Code of 1939 has allowed a "marital deduction" from a decedent's gross taxable estate for the value of interests in property passing from the decedent to his surviving spouse.[2] With several exceptions, no marital deduction is allowed for interests which are defined as "terminable" under paragraph (1)(B) of subsection (e).[3] Prior to 1958, paragraph (1)(F) of subsection (e) contained an exception to this rule in the case of certain terminable interests provided a number of conditions were met. The transfer was required to be in trust and did not qualify for the deduction unless (1) the surviving spouse was entitled to *all* of the income from the entire corpus of the trust during her life, (2) the income was payable at annual or more frequent intervals to her, and (3) the sur-

viving spouse was given a complete and unrestricted power to appoint the entire remainder in the trust property to herself or to her estate. Congress, in 1958,[4] made a series of substantive changes to the provisions of paragraph (F) in order to apply rules comparable to the provisions of section 2056(b)(5) of the Internal Revenue Code of 1954. Now it is no longer necessary that the interest passing to the surviving spouse be in trust.[5] Moreover, an interest passing to a surviving spouse may now qualify if it constitutes only a "specific portion" of the interest in property passing from the decedent, rather than the entire interest, and if the spouse is entitled merely to *all* the income from that "specific portion," and the surviving spouse has a general power of appointment over at least *that* "specific portion." In addition to these substantive changes, Congress provided that "[i]f refund or credit of any over-

at any time within one year from such date, by the operation of any law or rule of law (other than section 3760 of the Internal Revenue Code of 1939 or section 7121 of the Internal Revenue Code of 1954, relating to closing agreements, and other than section 3761 of the Internal Revenue Code of 1939 or section 7122 of the Internal Revenue Code of 1954, relating to compromises), refund or credit of such overpayment may, nevertheless, be made or allowed if claim therefor is filed within one year after the date of the enactment of this Act. No interest shall be allowed or paid on any overpayment resulting from the enactment of this section."

2. The deduction allowed is: "An amount equal to the value of any interest in property which passes or has passed from the decedent to his surviving spouse, but only to the extent that such interest is included in determining the value of the gross estate." Int.Rev.Code of 1939, § 812(e) (1) (A). This subsection was added by section 361(a) of the Revenue Act of 1948, 62 Stat. 110, 117.

3. Paragraph (1) (B) of subsection (e) of section 812 provides:
 "(B) *Life estate or other terminable interest.*—Where, upon the lapse of time, upon the occurrence of an event or contingency, or upon the failure of an event or contingency to occur, such interest passing to the surviving spouse will ter-

minate or fail, no deduction shall be allowed with respect to such interest—
 "(i) if an interest in such property passes or has passed (for less than an adequate and full consideration in money or money's worth) from the decedent to any person other than such surviving spouse (or the estate of such spouse); and
 "(ii) if by reason of such passing such person (or his heirs or assigns) may possess or enjoy any part of such property after such termination or failure of the interest so passing to the surviving spouse;
and no deduction shall be allowed with respect to such interest (even if such deduction is not disallowed under clauses (i) and (ii)—
 "(iii) if such interest is to be acquired for the surviving spouse, pursuant to directions of the decedent, by his executor or by the trustee of a trust.
"For the purposes of this subparagraph, an interest shall not be considered as an interest which will terminate or fail merely because it is the ownership of a bond, note, or similar contractual obligation, the discharge of which would not have the effect of an annuity for life or for a term."

4. Footnote 1, supra.

5. This substantive change is in no way material to the instant case because the interest here involved was in trust.

payment resulting from the application of such amendment" to paragraph (F) is prevented by law, a taxpayer may nevertheless be entitled to it upon the filing of a new claim within a year after the enactment.[6]

The government argues against the availability of the deduction on the grounds that none of the conditions of subsection 812(e) (1) (F) as amended have been met. We need not pass on all the government's contentions since we are of the opinion, for the reasons given below, that the surviving spouse under the terms of decedent's trust was not entitled to *all* the income from a "specific portion" of that trust and, therefore, the interest in property passing to the surviving spouse is not a "deductible interest" for the purpose of the marital deduction.

On March 24, 1944, Alexander J. Chandler created a revocable *inter vivos* trust in which he reserved a life interest in the principal and income of the trust. The trust was subsequently amended on a number of occasions prior to his death. As finally amended, the portion of decedent's trust which deals with the property interest here in question reads as follows:

"4. The Trustee shall, out of the income of the Trust Property, pay all expenses of operating the same, including a reasonable compensation for its services, all interest on mortgages and other indebtedness, and set aside a reasonable reserve to take care of future expenses and the payment of interest or reduction of the principal of any existing mortgages or other indebtedness, and after the above payments are made or provided for, the Trustee, after the death of the Trustor, shall distribute the residue of the income to the beneficiaries as follows:

"1. The Trustee shall pay from the income of the Trust Property, at convenient intervals, the sum of Five Hundred ($500.00) Dollars per month, to Rosa Bell Chandler, wife of the Trustor, said payments to begin at the Trustor's death, and to continue until the termination of the trust, and if at any time there shall not be sufficient income available to make said payments of $500.00 per month, the same shall be paid out of the principal of the Trust Property.

"2. Out of the remainder of the income, or out of the principal, if no income be available for the purpose, there shall be paid by the Trustee, as soon as convenient after my death, the following amounts to the following named persons:

"To Marian Chandler, niece of the Trustor, Four Thousand ($4,-000.00) Dollars;

"To Louis Chandler Price, niece of the Trustor, Four Thousand ($4,000.00) Dollars;

"To Harry L. Chandler, brother of the Trustor, and his wife, Bertha Chandler, and the survivor as joint tenants, and not as tenants in common, Four Thousand ($4,000.00) Dollars;

"To Emma Baldwin, widow of Charles A. Baldwin, One Thousand ($1,000.00) Dollars;

"To Austin Baldwin of Boston, Massachusetts, One Thousand ($1,000.00) Dollars; and

"To Harry Baldwin, of Coaticook, Canada, One Thousand ($1,-000.00) Dollars,

"Provided, that none of these payments shall be made unless the Trustee shall be satisfied that such payments will not impair the ability of the Trust to make the payments of $500.00 per month to Rosa Bell Chandler, wife of the Trustor, during the existence of the Trust, nor the payment of the present worth of an annuity of Five Hundred ($500.00) Dollars per month to Rosa Bell Chandler

6. Section 93(b) of the Technical Amendments Act of 1958, supra, footnote 1.

upon the termination of the trust as hereinafter provided.

"The Trustee's discretion in making or withholding such payments shall not be subject to question, nor shall the Trustee be liable for any error in judgment in making or withholding such payments.

"Upon the termination of the Trust, the balance of the Trust Estate shall be paid to Rosa Bell Chandler, widow of the Trustor. None of the payments above provided for to be made to any beneficiary shall lapse by reason of the death of the beneficiary except those payments that are expressly provided to be made for life only.

\* \* \* \* \* \*

"4. This Trust shall terminate at such time as, in the discretion of the Trustee, Estate and Inheritance taxes have been paid and clearance therefrom obtained from the State and Federal authorities, and the securities and property in the Trust are placed in proper condition to be paid over and distributed to my widow, Rosa Bell Chandler, if living at that date, or to her heirs, if she be deceased, provided, that in no event shall the Trust continue for longer than twelve (12) years after my decease.

"If Rosa Bell Chandler is living at the time of such distribution, upon her request, the Trustee shall purchase for her an annuity of Five Hundred ($500.00) Dollars per month for her life, or such lesser sum as may be purchased with the available funds in an insurance company satisfactory to Rosa Bell Chandler, and approved by the Trustee."

Since decedent had retained a life interest in the corpus and income of the trust, the trust property was included in his gross estate for Federal estate tax purposes when he died on May 8, 1950. On the Federal estate tax return, filed on behalf of decedent's estate, it was claimed that the trust balance of $471,491.27 qualified for the marital deduction. This return was audited by the Internal Revenue Service resulting in the issuance of a 90-day statutory notice of estate tax deficiency in the amount of $72,551.89. This deficiency was almost entirely due to the Service's disallowance of the claimed marital deduction. The Service took the position that the interest in property passing to the surviving spouse under decedent's *inter vivos* trust did not qualify as a "deductible interest" for the purpose of the marital deduction. That is, whereas a marital deduction in the amount of $249,075.86 had been taken on decedent's return, the Service determined that only $27,520.81 qualified for such purposes. This latter figure represented the value of property passing directly to the ·surviving spouse as joint property and was not part of the trust property.

On July 11, 1951, the Phoenix Title and Trust Company, as administrators of decedent's estate and as trustees of decedent's trust, filed a petition in the Tax Court for review of the Commissioner's action in disallowing the claimed marital deduction. This action was settled by the stipulated judgment of the Tax Court in which the proposed deficiency was· reduced from $72,551.89 to $52,086.57 before a possible credit for State inheritance and estate taxes. The reduction of the original deficiency resulted from the allowance to decedent's estate of a marital deduction increase of $63,304.-13. This was based on the agreement that the present worth of the annuity of $500 a month which the surviving spouse was entitled to receive under decedent's trust was a "deductible interest" for purposes of the marital deduction. This increase in the marital deduction, plus another minor adjustment of $650, produced the before-tax credit deficiency of $52,-086.57 noted above, rather than the $72,-551.89 proposed by the Revenue Service on its 90-day statutory notice of deficiency. The ultimate amount due after credits for State taxes was determined to

be $45,023.42. This amount was paid on August 7, 1951.

Within one year after the passage of the Technical Amendments Act of 1958 taxpayer filed claims for refund of $45,-023.42, purporting to be authorized by section 93 of that Act. The Commissioner rejected the claims and this suit followed.

In asserting that the interest in property passing to her under decedent's trust estate qualifies as a "deductible interest" for the marital deduction, taxpayer divides decedent's trust estate into the following four portions: (1) the portion of principal required to produce the $500 a month annuity; (2) the $15,000 to be paid to the other beneficiaries either out of income or principal; (3) the amount of principal required to pay death costs; (4) the balance of the trust estate.

Taxpayer then contends that she was entitled to all the income from the "balance of the trust" and that the "balance of the trust" is a "specific portion" within the meaning of subpart (e) (1) (F), as amended. On the other hand, the government argues that the "balance of the trust" does not constitute a "specific portion" because it is not a "fractional" or "percentile share" as required by the Treasury Regulations.[7]

Even if we reject the government's restricted interpretation of what constitutes a "specific portion" and accept taxpayer's categorization here of "the balance of the trust estate" as being a "specific portion," we are of the opinion that taxpayer has failed to meet the "income" requirements of paragraph (1) (F) of subsection (e). That is, we think taxpayer was not *entitled* to all of the income from the "balance of the trust estate" and this income was not *payable* annually or at more frequent intervals.

The recent Supreme Court pronouncement in this area makes it clear that the deductibility of an interest passing to a surviving spouse must be judged as of the time of decedent's death rather than at a later date. Jackson v. United States, 376 U.S. 503, 509, 84 S.Ct. 869, 11 L.Ed.2d 871 (1964). See also, Shedd's Estate v. Commissioner of Internal Revenue, 237 F.2d 345, 350 (9th Cir. 1946). Moreover, "the determinative factor is not taxability to the surviving spouse but terminability as defined by the statute." (376 U.S. at 510, 84 S.Ct. at 873).[8] Admittedly, we are not confronted here with the threshold issue of terminability, but rather our inquiry is concerned with the question of whether an interest despite its terminable nature[9] meets the

---

7. Treasury Regulations 105, section 81.47a (c) (3), defines "specific portion" in the following manner:

 "(3) *Definition of 'specific portion'.* —A partial interest in property is not treated as a specific portion of the entire interest unless the rights of the surviving spouse in income and as to the power constitute a fractional or percentile share of a property interest so that such interest or share in the surviving spouse reflects its proportionate share of the increment or decline in the whole of the property interest to which the income rights and the power relate. Thus, if the right of the spouse to income and the power extend to one-half or a specified percentage of the property, or the equivalent, the interest is considered as a specific portion. On the other hand, if the annual income of the spouse is limited to a specific sum, or if she has a pow-

 er to appoint only a specific sum out of a larger fund, the interest is not a deductible interest. * * *."
 The Second Circuit in Gelb v. Commissioner of Internal Revenue, 298 F.2d 544 (2d Cir. 1962), held that portion of the Regulation invalid insofar as it would limit a "specific portion" to "a fractional or percentile share."

8. The Court based this conclusion on the examples cited in the legislative history. See S.Rep.No. 1622, 83d Cong., 2d Sess., p. 125; H.R. 2573, 86th Cong., 1st Sess.; H.R.Rep. No. 818, 86th Cong., 1st Sess. But see S.Rep.No. 1013 (Part 2) 80th Cong., 2d Sess. (1948–1 Cum.Bull. 331, 342).

9. Under the twofold test of paragraph (1) (B) of subsection (e) taxpayer's interest in the balance of the trust estate was a terminable interest.

conditions of paragraph (1) (F) so as to make the otherwise applicable bar of paragraph (1) (B) inoperative. However, we see no valid reason why we should depart from the rule in Jackson and expand our inquiry to post death events to determine whether an interest qualifies as an exception to the terminable interest rule.

 A determination of whether or not a surviving spouse has a right to all the income from a "specific portion" of the interest depends upon whether she had at the time of decedent's death an *unqualified* right to such income thus making her the "virtual owner" of the property.[10] It is clear that Congress did not intend this exception to the terminable interest rule "to apply where all or part of such income may be diverted to others upon stated contingencies * * *." *Estate of Weisberger*, 29 T.C. 217, 221 (1957). Such an infirmity, we believe, would not make one the "virtual owner" of the property. We must look to the language actually used in the trust instrument and interpret it in the light of local law in determining whether the surviving spouse had an unqualified right to such income. Shedd's Estate v. Commissioner of Internal Revenue, supra at 346 of 237 F.2d. In so doing, we cannot deviate from the clear and unambiguous language of the trust instrument, nor can we look to see how the particular trustee chose to administer the trust in controversy.

Taxpayer asserts that she was entitled to all the income from the "balance of the trust estate" by claiming that she was so "advised" by Arizona counsel. In addition, taxpayer argues that she was in fact paid all of that income.

We shall consider taxpayer's second contention first. We find no merit to this argument, since as we have said above the deductibility of an interest must be determined as of the time of decedent's death. Thus the manner in which this particular trust was administered has no legal significance whatsoever for purposes of the marital deduction. The fact that subsequent events might have qualified this interest for the exception of the terminable interest is not the determinative factor. Jackson v. United States, supra at 510 of 376 U.S., 84 S.Ct. 869.

Taxpayer's second contention that she was "advised" that under the terms of the trust and applicable Arizona law she was entitled to all the income from the trust appears to be clearly contrary to the unambiguous terms of the trust instrument. Moreover, taxpayer has failed to call to our attention any Arizona statute or decided case which requires us to give a different interpretation to what we think are the clear and unambiguous directives of the trust.[11]

██ Under decedent's trust, trust income was first to be applied in satisfaction of the $500 per month payments to taxpayer. If any income remained the

---

10. See S.Rep.No. 1013 (Part 2) 80th Cong., 2d Sess. (1948–1 Cum.Bul. 331, 342) where the report states that "[t]hese provisions [paragraph (1) (F)] have the effect of allowing a marital deduction with respect to the value of property transferred in trust * * * where the surviving spouse, by reason of her right to the income and a power of appointment, is the virtual owner of the property." U.S.Code Cong.Service 1948, p. 1238.

11. Taxpayer argues that the law of Arizona is a question of fact which bars summary judgment for defendant. There is no basis for this contention, since the laws of any state may be judicially noted and applied by this court without necessity for formal proof. 28 U.S.C. § 1738 (1958 Ed.); Bowen v. Johnston, 306 U.S. 19, 23, 59 S.Ct. 442, 83 L.Ed. 455 (1939).

trustee was directed to pay $15,000 to certain named beneficiaries.[12] The trust instrument is silent as to the disposition of the income that might remain after the $15,000 in bequests had been made. We presume that it was to be accumulated until the termination of the trust. The only income to which taxpayer was entitled during the existence of the trust was $500 per month (for which a marital deduction has already been obtained). Her right to the balance of the trust corpus and any income accumulated thereon was dependent on her being alive at the time of the termination of the trust. Thus not only the income produced by that portion of corpus which taxpayer denotes as the balance of the trust estate was first to be applied in satisfaction of the pecuniary bequests, but also taxpayer's right to any remainder was dependent on the contingency that she survive the termination of the trust.[13] Under such circumstances, we do not think that taxpayer had an *unqualified* right to such income making her the "virtual owner" of the property. The fact that trust income might have amounted only to $500 a month and that the pecuniary bequests were in fact satisfied from corpus is immaterial, since deductibility of the interest is determined from the language of the trust instrument as of decedent's death and not from subsequent events.

Accordingly, for the reasons stated above, plaintiff is not entitled to recover. Defendant's motion for summary judgment is granted; plaintiff's motion is denied and her petition is dismissed.

12. In the event that income proved insufficient, the trust required that these pecuniary bequests be paid out of corpus.

13. The trust instrument provided that the corpus of the trust estate would go to taxpayer's heirs in the event that she died before the termination of the trust. Arizona law recognizes this contingent remainder as a "real interest" which cannot be defeated "except by the manner or means provided or authorized in the creation of such estate." Section 71–116, Ariz.Code (1939), A.R.S. §§ 33–225, 33–226; Johnson v. Superior Court, 68 Ariz. 68, 199 P.2d 827 (1948). The only means provided for in the trust instrument by which this contingent remainder could be defeated was the termination of the trust and, absent that, the heirs' interest could not be defeated. Dreyer v. Lange, 74 Ariz. 39, 243 P.2d 468 (1952).