199 P.2d 827

JOHNSON et al. v. SUPERIOR COURT IN AND FOR MARICOPA COUNTY et al.

No. 5168.

Supreme Court of Arizona.

Nov. 23, 1948.

Thomas J. Croaff, in pro. per., H. S. Mc-Cluskey, and J. H. Morgan, both of Phoenix, for respondents.

PER CURIAM.

This is an original proceeding in mandamus initiated by the petitioners against the Superior Court of Maricopa County and the Honorable Thomas J. Croaff, one of the judges thereof, to compel respondent to fix and determine the amount of, and to approve, a supersedeas bond on appeal. The alternative writ of mandamus was issued and the respondent judge has made his return and answer.

The facts necessary to a determination of this matter are these: One Katherine Pius, the record owner and in possession of certain real and personal property, did on October 5, 1940, convey that property to the Phoenix Title and Trust Company in trust for certain purposes. The Title Company had managed this property from the date the trust was created until January 8, 1948, when Katherine Pius died intestate. Notwithstanding the provisions of said trust, one Pierce F. Pius, a beneficiary named therein, and for whose support the trustor had made provision, made claim to all of the property embraced within the trust upon the ground that he, as the surviving husband of the trustor, was entitled thereto. Whereupon the trustee, on March 3, 1948, filed a "complaint in interpleader and for instructions" in the Superior Court of Maricopa County, with all

Jennings, Strouss, Salmon & Trask, of Phoenix, for petitioners.

of the persons named as beneficiaries in the trust agreement (among whom are these petitioners) being made parties defendant. The complaint asked that all of the defendants be required to appear and set forth their interest in the matter and that the plaintiff be instructed concerning the execution of the trust. All of the beneficiaries who filed answers, except Pierce F. Pius, admitted the execution of the trust, asserted its validity, and prayed that its provisions be enforced according to its terms. Pierce F. Pius, however, while admitting the execution of the trust, denied its validity upon the ground that the settlor had not been mentally competent when the instrument was executed, and upon the further ground that the property was community property and that he had not joined in the transfers to the trustee. He also prayed that administration be had upon the assets held by the Title Company, and that he be granted a family allowance of $300 per month from the corpus of the trust pending the determination of the action. Obviously administration of the settlor's estate could only be had after title and ownership of the property in question had been first determined and then by strictly following the probate law and procedure set out in Chapter 38, A.C.A.1939, relative to decedents' estates. Nevertheless, as a preliminary matter, the respondent proceeded to a hearing on the husband's prayer for a family allowance, at the conclusion of which the court, on August 5, 1948, entered the following order:

"Order, plaintiff, as Trustee, is authorized and directed to pay defendant Pierce F. Pius out of the Trust Estate, the sum of two hundred dollars ($200.00) each month, on the 1st of each month, beginning August 1, 1948, and continuing until the further order of this Court, as and for support of said Pierce F. Pius, pending this action."

Petitioners gave a timely notice of appeal from this order and also made application under the provisions of Sec. 21-1809, A.C.A.1939, for a stay pending appeal and for the fixing of a supersedeas bond. The Court denied the application and refused to fix and determine the amount of such a bond or to approve same, whereupon the instant suit was brought by these remaindermen.

In order to determine whether a peremptory writ of mandamus should issue against the respondents it is necessary for us to decide three principal questions: (1) Did the petitioners have a sufficient interest in the matter to entitle them to contest the order granting a family allowance to Pierce F. Pius, and may they bring this action of mandamus? (2) Is the order of the court of August 5, 1948, a reviewable order from which an appeal may be taken? And (3) do the petitioners have any other plain, speedy or adequate remedy at law so as to preclude them from maintaining this action?

While neither the legality of the order appealed from nor the validity of the trust

agreement itself is now before us, we must assume for the purpose of determining the petitioners' rights in this mandamus matter that the trust in question is valid and subsisting.

In determining the first question it is unnecessary to make a searching and detailed analysis of this lengthy trust indenture, nor need we determine the precise nature of the beneficial property interest of these petitioners in the trust res; suffice it to say that our study convinces us that they do have a sufficient remainder interest, whether vested or contingent in character, to contest the order of the court granting the allowance by asserting the validity of the trust agreement. Any wrongful disposal of the corpus or even the income of the trust res will injuriously affect the interest of the remaindermen as their interest, the enjoyment of which is postponed, is in all of the property subject to the trust which might remain after the deaths of the life beneficiaries, and this interest will take effect in possession immediately on the determination of the preceding life interests. Nor is the present interest of these petitioners as beneficiaries less real by virtue of the fact that the amount of the estate remaining undisposed of at the expiration of the particular estate is uncertain. 31 C.J.S., Estates, § 69, page 90. During the period of a life beneficiary's interest the ultimate beneficiaries have sufficient interest to protect the trust fund and see that the trust is properly executed. 65 C.J., Trusts, Sec. 289; Hunt v. Hunt, 124 Mich. 502, 507, 83 N.W. 371, 373. We quote from the case of Roberts v. Michigan Trust Co., 273 Mich. 91, 262 N.W. 744, 749:

"In Lewin, Trusts (13th Ed.) p. 874, the correct rule is stated as follows: 'And generally a cestui que trust, who can allege an existing interest, however minute or remote, may, upon reasonable cause shown, apply to the court to have his interest properly secured.'"

See also Hall v. M. B. O'Reilly Realty & Investment Co., 306 Mo. 182, 267 S.W. 407; Mudd v. Lanier, 247 Ala. 363, 24 So. 2d 550; Withington v. Shay, 47 Cal.App. 2d 68, 117 P.2d 415, 119 P.2d 1; Waurika Oil Ass'n v. Ellis, Tex.Civ.App. 1923, 254 S.W. 1032. As to beneficiaries being parties aggrieved, see 4 C.J.S., Appeal and Error, §§ 183 and 204b.

We conclude, as to this first question, that the petitioners, as beneficiaries under the trust here involved were "parties aggrieved" within the provisions of Sec. 21-1701, A.C.A.1939, and the interpretation thereof in Burmister v. City of Prescott, 38 Ariz. 66, 297 P. 443, and were therefore entitled to appeal from the order hereinbefore set forth, and that they were also "parties beneficially interested" so as to entitle them to maintain this mandamus action under Sec. 28-201, A.C.A.1939. See Barry v. Phoenix Union High School, 67 Ariz. 384, 197 P.2d 533.

■ We now consider the appealability of the order in question. Petitioners contend that it is appealable under any one of several subdivisions of Sec. 21-1702, A.C.A.1939, particularly subsection 1, "From a final judgment entered in an action or special proceeding commenced in a superior court * * *." It is manifest that the order of August 5, 1948, with each payment made thereunder, effectually and irrevocably disposes of a portion of the res which is the subject of the action. The moneys thus paid pass beyond the control of the court forever, and hence such order is a final determination of the particular matter even though it reads "* * * until the further order of this Court * * * pending this action." It is a fait accompli.

Counsel for respondent, in contesting the appealability of the order, rely upon the following cases: In re Sears' Guardianship, 44 Ariz. 408, 38 P.2d 308; In re Tamer's Estate, 20 Ariz. 228, 179 P. 643; Ritter v. Arizona Cattle Co., 34 Ariz. 278, 271 P. 25. We are of the opinion that these cases are not in point, but rather that the principles laid down in the cases of In re Prescott State Bank, 36 Ariz. 419, 286 P. 189 and Ross v. White, 46 Ariz. 304, 50 P.2d 12, are controlling here. For similar holdings from other jurisdictions supporting these latter two cases see: Dant & Russell v. J. D. Halstead Lumber Co., 9 Cir., 103 F.2d 306; Yoelin v. Kudla, 302 Ill.App. 413, 24 N.E.2d 67; Northern Nevada Loan Ass'n v. John H. Cazier & Sons Co., 49 Nev. 115, 239 P. 395; Pennsylvania Co. for Ins. etc. v. Philadelphia Co., 3 Cir., 266 F. 1, 4. The distinction between the two types of cases is that in the former the payment was at the instance of the person in control of the funds. That person was duty bound to account, and the time to attack his action was upon that accounting. Until that time the action was intermediate. Such orders were, therefore, not appealable. But in the latter group of cases, which are similar to the one at bar, a third party institutes a proceeding against the person in charge of the funds to obtain moneys from the receivership or estate, and such action is a separate proceeding in the same sense that it would have been had an independent suit been filed. Where an order is made allowing or disallowing the claim, such an order is not intermediate but final, and moneys paid under it are gone forever. A personal representative or trustee, paying out funds upon the determination of such a proceeding, is protected in a later accounting. It is not his action, but rather is the final action of the court in a special proceeding in the case. Such orders are properly held to be appealable.

■ Having determined that the petitioners have such an interest as to entitle them to bring the instant proceeding and that the order is reviewable, it follows that the petitioners were entitled to a suspension of the execution of the order by the giving of a supersedeas bond provided for

by Sec. 21-1809, A.C.A.1939. Hence the trial court was in error in refusing to fix the amount of and to approve such a bond as they were entitled to this as a matter of law, it not being a discretionary matter. The case of Gotthelf v. Fickett, 1930, 37 Ariz. 322, 294 P. 837, decided that an original mandamus proceeding in this court was the appropriate method of compelling the trial court to grant supersedeas, such action being merely ministerial where the order is appealable. While the ordinary remedy by appeal is inefficacious under circumstances as herein shown to give the relief to which the parties have shown themselves entitled, it is urged by the respondents that through the adoption in this state of the Federal Rules of Civil Procedure, 28 U.S.C.A., in 1940 petitioners have now been provided with a plain, speedy and adequate remedy at law, to wit, a proceeding under Sec. 21-1828, A.C.A. 1939, hereinafter referred to as Rule 75(j), which reads:

"*Record for preliminary hearing in Supreme Court.*—If, prior to the time the complete record on appeal is settled and certified as herein provided, a party desires to docket the appeal in order to make in the Supreme Court a motion for dismissal, *for a stay pending appeal,* for additional security on the bond on appeal or on the supersedeas bond, or for any intermediate order, the clerk of the superior court at his request shall certify and transmit to the Supreme Court a copy of such portion of the record or proceedings below as is needed for that purpose." (Emphasis supplied.)

We are in agreement with the contention of respondents that this procedure does provide an expeditious method of presenting a skeleton record to this court upon which to bottom a motion for a stay pending appeal. 3 Moore's Federal Practice, Sec. 75.01(10), p. 3408, 1947 Supplement, Sec. 75.10, p. 356; Federal Rules of Civil Procedure and Proceedings of the American Bar Association Institute (1938) pp. 155, 366, 372 and 374. There are but few reported cases invoking any of the provisions of this rule, and we have been unable to find any case in this jurisdiction or elsewhere wherein this rule as a method of staying an order pending appeal has been utilized.

We are, then, confronted with a legal dilemma as to which course to follow. Should we grant the writ (it certainly being an appropriate and proper remedy under our general law prior to the adoption of the Federal Rules of Civil Procedure, and this court having the jurisdiction to grant it) or should we deny it solely upon the ground that petitioners should have invoked the remedy open to them under Rule 75(j), supra? To follow the latter course would be on a par with the legalistically minded judge who ordered the defendant in a drunken driving case to go at once and get himself a driver's license so that the state could revoke it. It appears to us that it would be unduly harsh and legalistic to deny the peremptory writ un-

der these circumstances. Rule 75(j) is no doubt one with which most of the bench and bar of the state are unfamiliar. This is our first occasion to consider it in such a situation. One thing is sure, that this court must ultimately determine petitioners' right to supersede or stay the order. It is our belief, especially where as here the alternative writ has already issued, that justice will be done by the issuance of the peremptory writ; that it would be idle to require the petitioners at this stage of the proceedings to begin all over again under the provisions of Rule 75(j). We have precedent for this action in the case of Van Dyke v. Superior Court, 24 Ariz. 508, 211 P. 576, 588, wherein respondents sought the dismissal of an alternative writ of prohibition upon the ground that the ordinary remedy of appeal or the additional remedies of certiorari and habeas corpus were available. The court said:

"* * * It is true that under the provisions of paragraph 1498 of our Civil Code the court which issues a writ of certiorari may require the inferior tribunal to desist from further proceedings; and it may be that certiorari would have been a proper remedy in this case at the time the alternative writ was applied for. Upon this question it is unnecessary to express any opinion. For, looking to the rights to be protected, we see no reason why we should be acute to find in the statutory terms conferring the right to certiorari an adequate remedy which will bar the peremptory writ of prohibition, the alternative writ having issued, nor why we should discharge the writ now operative with the necessary effect of remitting the relators to another proceeding which, so far as the present record shows, must end in the same result. Even on the assumption that we might have refused the alternatice writ of prohibition because of the existence of another available remedy by certiorari, it is now obvious that the stay of proceedings provided for by the statute governing the issuance of certiorari, so far as effective, would be so as the equivalent of the remedies given at the time of the issuance herein of the alternative writ of prohibition. We will not do justice in this matter by halves, nor decide the difference which exists here between tweedledum and tweedledee."

For the guidance of the bar it should be clearly understood, however, that in the future this court will not in matters such as this, which are covered by Rule 75(j), entertain an original application for a writ of mandamus for the reason that we construe this rule as affording an expeditious and adequate remedy.

Let the peremptory writ issue as prayed.

STANFORD, C. J., UDALL, J., and C. C. FAIRES, Superior Judge, concur.

LA PRADE, J., being disqualified, the Honorable C. C. FAIRES, Judge of the Superior Court of Gila County, was called to sit in his stead.