IN THE
# ARIZONA COURT OF APPEALS
DIVISION TWO

_____

MCA FINANCIAL GROUP, LTD.,
*Appellant*,

*v.*

ENTERPRISE BANK & TRUST,
*Plaintiff/Appellee*.

No. 2 CA-CV 2014-0007
Filed December 30, 2014

_____

Appeal from the Superior Court in Santa Cruz County
No. CV2010000422
The Honorable Anna M. Montoya-Paez, Judge

**VACATED**

_____

COUNSEL

Snell & Wilmer L.L.P., Tucson
By Christopher H. Bayley, Jonathan M. Saffer, and Katherine V. Foss
*Counsel for Appellant*

Minkin & Harnisch PLLC, Phoenix
By Ethan B. Minkin and Andrew A. Harnisch
*Counsel for Plaintiff/Appellee*

---

## OPINION

Judge Espinosa authored the opinion of the Court, in which Presiding Judge Miller and Judge Brammer[1] concurred.

---

E S P I N O S A, Judge:

**¶1**      MCA Financial Group, Ltd. (MCA) appeals from an order requiring it to disgorge over $118,000 in fees paid to it by Enterprise Bank & Trust (Enterprise), arguing that, because MCA was not a party to the underlying proceeding, it was not subject to the trial court's jurisdiction. It also contends the court erred by failing to hold an evidentiary hearing on the merits of the disgorgement claim and by failing to conclude Enterprise had waived any objection to MCA's fees. Because we agree the court lacked jurisdiction, its order must be vacated.

### Factual and Procedural Background

**¶2**      "We view the facts in the light most favorable to upholding the trial court's ruling." *Hammoudeh v. Jada*, 222 Ariz. 570, ¶ 2, 218 P.3d 1027, 1028 (App. 2009). In April 2009, Enterprise agreed to loan $4,182,000 to Americana Nogales, LLC (Americana) to acquire a hotel in Santa Cruz County. The following year, Enterprise filed a lawsuit alleging that Americana had defaulted on its loan obligations by failing to remit payments as required under the loan agreement and promissory note.[2] In addition to seeking

---

[1]The Hon. J. William Brammer, Jr., a retired judge of this court, was called back to active duty to serve on this case pursuant to orders of this court and the supreme court.

[2]Enterprise initiated the action as successor in interest to the Federal Deposit Insurance Corporation, which was acting as receiver for the original lender, Valley Capital Bank, N.A. The named defendants included the borrower, Americana, the guarantor, Michael A. Clausen, and several parties believed to possess

monetary relief, Enterprise requested that a receiver be appointed pursuant to a provision in the deed of trust that Americana had executed to secure the loan.

¶3        In January 2011, the trial court appointed "Robert Itkin of MCA Financial Group, Ltd." as receiver in an order that directed him to, among other things, "operate, manage, maintain, preserve and protect the Receivership Property; . . . employ any person or firm to collect, manage, lease, maintain and operate the Receivership Property[; and] hire . . . consultants, property management companies, brokers and any other personnel or employees which the Receiver deems necessary to assist it in the discharge of its duties." Enterprise subsequently filed an "Oath of Receiver," in which Itkin swore to "faithfully discharge the duties of receiver" and "obey all orders of the Court." Itkin executed this oath on a line designated for his signature.

¶4        From January to October 2011, MCA on a monthly basis submitted bills to Enterprise for "professional services" rendered by several of its employees, including Itkin. Enterprise paid the invoices by checks made out to "MCA Financial Group." In October, Enterprise filed a "Notice of Receiver's Change of Firm," in which it stated that Itkin, who had been "appointed as Receiver over the subject collateral pursuant to this Court's Order," had become a managing director at Simon Consulting Group, LLC. Following Itkin's departure, both he and MCA continued to perform management and consulting services, but MCA ceased billing for Itkin's services. In November 2012, the trial court granted Enterprise's application to appoint a new receiver, Resolute Commercial Services, LLC (Resolute), and an amended order of appointment was filed to reflect this change.

¶5        The following month, Itkin filed a receivership report "containing, among other things, all receivership expenses, fees, and a narrative description of [his] performed duties and related

subordinate interests in the loan collateral. The trial court granted default judgments against Americana and the guarantor in early 2011 after both failed to appear.

information for the period of [his] appointment as Receiver." In response, Enterprise filed a motion objecting to Itkin's receivership report and requesting disgorgement of fees it had paid to MCA on the ground the fees were excessive. MCA, not having been joined by Enterprise as a party for purposes of its disgorgement motion or any other matter, entered a special appearance "for the limited purpose of responding to the allegations and arguments contained in [Enterprise's motion]," and argued that such a motion for relief from a non-party who had "never served as the receiver" was "procedurally improper" and should be summarily denied on that basis. In the alternative, MCA requested an evidentiary hearing to determine whether the fees charged were, in fact, excessive. The trial court heard argument on the motion in September 2013, and took the issues raised by the parties, including the necessity of an evidentiary hearing, under advisement. In October, the court issued a ruling that determined a reduction of fees was warranted because "MCA did not[] execute their duties appropriately." Implicitly denying MCA's request for an evidentiary hearing on the matter, the court granted Enterprise's motion and ordered MCA to disgorge $118,185.93. Its order expressly referred to the period when "MCA served as receiver."

## Discussion

**¶6**         On appeal, MCA argues the trial court lacked jurisdiction to enter the disgorgement order because MCA was a "third-party vendor" that was "never appointed receiver" or "joined as a party to the case." Relying on precedents in which we have declined to uphold rulings against non-parties who were not given "a full opportunity to contest" their liability, *Heinig v. Hudman*, 177 Ariz. 66, 71, 865 P.2d 110, 115 (App. 1993); *see also Spudnuts, Inc. v. Lane*, 139 Ariz. 35, 37, 676 P.2d 669, 671 (App. 1984), MCA argues that the court's ability to approve the receiver's expenses did not obviate the joinder requirement because "the only party over whom the trial court had jurisdiction relevant to this dispute was [Itkin]." In support of its factual claim that Itkin served as the receiver in an individual capacity, MCA relies on the court's order designating "Robert Itkin of MCA Financial Group, Ltd." as receiver, and points

to Itkin's departure from MCA as evidence that the receiver role was filled by Itkin in his personal capacity.

¶7          Enterprise responds that, although Itkin was the receiver "in a very technical sense," the agency relationship between Itkin and MCA "bound MCA to the terms of the Receivership Order, including the court oversight provisions" that allowed the trial court to exercise control over compensation.[3]  In support of its agency theory, Enterprise points to evidence that MCA transmitted bills and collected fees for Itkin's receiver services.  Observing that MCA posted the receiver's bond and performed certain receivership tasks, Enterprise also argues the court had the ability to exercise control over fees and expenses directed to both Itkin and MCA.  We review the court's exercise of personal jurisdiction de novo.  *Desarrollo Immobiliario y Negocios Industrialies De Alta Tecnologia De Hermosillo, S.A. De C.V. v. Kader Holdings Co.*, 229 Ariz. 367, ¶ 10, 276 P.3d 1, 5 (App. 2012); *Arizona Tile, L.L.C. v. Berger*, 223 Ariz. 491, ¶ 8, 224 P.3d 988, 990 (App. 2010).

## Appellate Jurisdiction

¶8          Because MCA was neither named as a party to Enterprise's disgorgement request nor ever served with process, we first examine our own jurisdiction to consider the merits of this appeal.[4]  *See Musa v. Adrian*, 130 Ariz. 311, 312, 636 P.2d 89, 90 (1981)

---

[3]In a section titled "Payment of Receiver," the order of appointment stated the "Receiver's fees and administrative expenses paid shall be submitted to the Court for final approval and confirmation."

[4]Although MCA filed an "Emergency Motion to Intervene" after the trial court issued its ruling, that motion had not yet been decided at the time this appeal was filed.  Regardless, it would not affect our jurisdictional analysis because MCA's motion was based on its belief that it could "not properly appeal the disgorgement order" unless it became a party to the action.  *See Nat'l Homes Corp. v. Totem Mobile Home Sales, Inc.*, 140 Ariz. 434, 437, 682 P.2d 439, 442 (App. 1984) (issue of waiver turns on whether party "has manifested

(appellate court has independent duty to consider its jurisdiction). "Generally, a person who is not a party to an action is not aggrieved and cannot appeal from findings adverse to him." *Wieman v. Roysden*, 166 Ariz. 281, 284, 802 P.2d 432, 435 (App. 1990); *see also* Ariz. R. Civ. App. P. 1 (limiting right of appeal to "any party aggrieved by the judgment"). However, this court has held that a non-party with a "direct, substantial and immediate" interest who "would be benefitted by reversal of the judgment" is entitled to appeal under Rule 1, Ariz. R. Civ. App. P. *Wieman*, 166 Ariz. at 284, 802 P.2d at 435 (attorney permitted to appeal attorney fee award imposed against him), *quoting Abril v. Harris*, 157 Ariz. 78, 81, 754 P.2d 1353, 1356 (App. 1987) (same). MCA is clearly an aggrieved non-party with a direct and substantial interest in the trial court's disgorgement order. We also, however, must determine whether that order is one that may be appealed. *See* A.R.S. § 12-2101 (enumerating "[j]udgments and orders that may be appealed").

**¶9** Under § 12-2101(A)(4), appeal may be taken from "a final order affecting a substantial right made in a special proceeding or on a summary application in an action after judgment." Our supreme court has held that a court order requiring a receiver to pay a claim is "appealable as a final judgment."[5] *In re Prescott State Bank*, 36 Ariz. 419, 424, 286 P. 189, 191 (1930); *see also Johnson v. Superior Court*, 68 Ariz. 68, 72, 199 P.2d 827, 830 (1948) (where court order allows or disallows claim to moneys from receivership or estate "order is not intermediate but final"); *cf. Ross v. White*, 46 Ariz. 304, 306-07, 50 P.2d 12, 13 (1935) (court's denial of petition for payment

---

an intent to be subject to the jurisdiction of the court, even though it has raised jurisdictional defects").

[5]*In re Prescott State Bank* distinguished between a situation where a receiver initiated a proceeding to pay a debt and one in which a third party petitioned the court for an order for a receiver to pay a claim, and found the latter appealable. 36 Ariz. 419, 422-24, 286 P. 189, 190-91 (1930), *citing Ritter v. Ariz. Cattle Co.*, 34 Ariz. 278, 286, 271 P. 25, 28 (1928) (court orders approving accounts of receiver or authorizing his expenditures reviewable only on appeal from final judgment approving or disapproving final accounting).

of legal services on behalf of insolvent bank not an "interlocutory order," but "final judgment of the court" and "final order").[6]  Here, the contested matter was not the receiver's conduct, which would not be appealable until the final accounting, *see Ritter v. Ariz. Cattle Co.*, 34 Ariz. 278, 286, 271 P. 25, 28 (1928), but rather the trial court's order directing MCA, a non-party, to pay the receivership.  As such, the order was the converse of, but similar to, an order that the receiver pay a third party and, logically, also a final order.  Stated differently, the order "was clearly final on all of [MCA's] rights in the affected property."  *Kemble v. Porter*, 88 Ariz. 417, 419, 357 P.2d 155, 156 (1960); *see Huston v. F.D.I.C.*, 800 S.W.2d 845, 847 (Tex. 1990) (trial court order "that resolves a discrete issue in connection with any receivership has the same force and effect as any other final adjudication of a court, and thus, is appealable").

**¶10**        We also must determine, however, whether the disgorgement proceeding was a "special proceeding" pursuant to

---

[6]In both *In re Prescott State Bank* and *Ross*, jurisdiction was found under the former version of § 12-2101(A)(1), which provided that an appeal may be taken "[f]rom a final judgment entered in an action or special proceedings commenced in a superior court."  Ariz. Rev. Code, § 3659, subd. 1 (1928); *see In re Prescott State Bank*, 36 Ariz. at 423-24, 286 P. at 191 (trial court's order reviewable under Ariz. Rev. Code, § 3659, subd. 1 (1928)); *Ross*, 46 Ariz. at 307, 50 P.2d at 13 (same); *see also In re Sullivan's Estate*, 38 Ariz. 387, 390, 300 P. 193, 194 (1931) (quoting Ariz. Rev. Code, § 3659, subd. 1 (1928) as granting right to appeal "from a final judgment entered in an action or special proceeding commenced in a superior court . . . .").  Given that "'[a] final judgment'" has since been defined to mean an order that "'decides and disposes of the cause on its merits, leaving no question open for judicial determination,'" *Ruesga v. Kindred Nursing Centers, L.L.C.*, 215 Ariz. 589, ¶ 10, 161 P.3d 1253, 1257 (App. 2007), *quoting Props. Inv. Enters., Ltd. v. Found. For Airborne Relief, Inc.*, 115 Ariz. 52, 54, 563 P.2d 307, 309 (App. 1977), and the receivership in this case appears to be ongoing, subsection (A)(4) provides the jurisdictional basis here rather than (A)(1).

§ 12-2101(A)(4). Our supreme court has held that where a party "institutes a proceeding against the person in charge of the funds to obtain moneys from the receivership or estate, . . . such action is a separate proceeding in the same sense that it would have been had an independent suit been filed." *Johnson*, 68 Ariz. at 72, 199 P.2d at 830; *see also* Black's Law Dictionary (9th ed. 2009) (defining "special proceeding" as "[a] proceeding that can be commenced independently of a pending action and from which a final order may be appealed immediately"). Thus, a court order allowing or disallowing a claim for moneys from a receivership or estate "is the final action of the court in a special proceeding in the case." *Johnson*, 68 Ariz. at 72, 199 P.2d at 830. Similarly, a proceeding to order a third party to pay the receivership is of the same species and finality. *See Huston*, 800 S.W.2d at 847.

¶11 Having determined that the subject order here satisfies the first clause of § 12-2101(A)(4) as "a final order affecting a substantial right made in a special proceeding," we last consider whether it also must satisfy the latter portion of § 12-2101(A)(4) referring to an order entered "in an action after judgment." A plain reading of the statute would suggest that subsection (A)(4) pertains to two separate types of final orders: (1) one "affecting a substantial right made in a special proceeding"; and (2) a final order made "on a summary application in an action after judgment." In applying subsection (A)(4), our supreme court has determined that an order was appealable without considering whether it was "after judgment." *Miller v. Superior Court*, 88 Ariz. 349, 351-52, 356 P.2d 699, 700 (1960) (removal of trustee appealable as affecting substantial rights of parties to removal proceeding). And we note that other states with similar jurisdictional statutes have separate provisions for the two types of final orders. *See, e.g., State v. Jacques*, 570 N.W.2d 331, 335 (Neb. 1997) (three types of final orders reviewable on appeal including "(2) an order affecting a substantial right made during a special proceeding, and (3) an order affecting a substantial right made on summary application in an action after judgment is

rendered");[7] *Ross v. Ross*, 640 N.E.2d 265, 268 (Ohio Ct. App. 1994) (noting statutory guideline for determining final order includes: "(2) An order (a) affecting a substantial right, and (b) made in (i) a special proceeding, or (ii) upon a summary application in a motion after judgment, is final.").[8]  We conclude we have jurisdiction over MCA's appeal under § 12-2101(A)(4), and we have amended the caption to accurately reflect the proper parties to this appeal.

## Trial Court Jurisdiction

¶12        Enterprise's failure to include or join MCA as a party below, however, remains relevant to our analysis of MCA's due process argument.  Although collaterally involved in the underlying receivership through its performance of services in connection with the management of the receivership estate, MCA never was served with process, or named in either Enterprise's lawsuit, the receivership proceedings, or the disgorgement motion as a party against whom relief was sought.  Therefore, under basic principles

---

[7]Nebraska statutes define "final order" as:

> An order affecting a substantial right in an action, . . . and an order affecting a substantial right made in a special proceeding, or upon a summary application in an action after judgment, is a final order which may be vacated, modified or reversed.

Neb. Rev. Stat. § 25-1902.

[8]Ohio Rev. Code Ann. § 2505.02 (West 2013) specifies:

> B) An order is a final order that may be reviewed, affirmed, modified, or reversed, with or without retrial, when it is one of the following:
>
> . . . .
>
> > (2) An order that affects a substantial right made in a special proceeding or upon a summary application in an action after judgment . . . .

of due process and *in personam* jurisdiction, it was not subject to the trial court's jurisdiction. *See Safeway Stores, Inc. v. Ramirez*, 99 Ariz. 372, 379, 409 P.2d 292, 297 (1965) ("For the court to have personal jurisdiction over a defendant . . . [the] party being served must clearly be given notice that he is being served as a defendant in the case."); *Barlage v. Valentine*, 210 Ariz. 270, ¶ 4, 110 P.3d 371, 373 (App. 2005) ("Proper, effective service on a defendant is a prerequisite to a court's exercising personal jurisdiction over the defendant."); *see also Sec. & Exch. Comm'n v. Ross*, 504 F.3d 1130, 1138 (9th Cir. 2007) (noting "'[s]ervice of process is the mechanism by which the court [actually] acquires' the power to enforce a judgment against the defendant's person or property"), *quoting United States v. 2,164 Watches, More or Less Bearing a Registered Trademark of Guess?, Inc.*, 366 F.3d 767, 771 (9th Cir. 2004) (alterations in *Ross*).

**¶13** Here, the trial court did not address the issue of personal jurisdiction in its ruling, nor, as MCA points out, has Enterprise cited any authority to support its contention that a court may order a non-party to disgorge compensation merely because such compensation had been paid in connection with a receivership. This absence of authority is not surprising, however, in light of our prior decisions concerning the imposition of non-party liability.

**¶14** In *Spudnuts*, for example, the trial court had granted a post-judgment motion to amend the pleadings to add an additional party-defendant. 139 Ariz. at 35, 676 P.2d at 669. On appeal, we observed that "'[t]he part[y] to be added must be properly brought before the court or no judgment can be entered or enforced.'" *Id.* at 36, 676 P.2d at 670, *quoting Sarne v. Fiesta Motel*, 79 F.R.D. 567, 570 (E.D. Pa. 1978). We reversed the judgment, concluding the additional defendant could not be subjected to liability without violating due process because "the court does not obtain jurisdiction over the person" where "service of process does not comply with the statutory requirements." *Id.* at 37, 676 P.2d at 671.

**¶15** Similarly, in *Heinig v. Hudman*, we rejected appellant's argument that a judgment against one party could be converted into a judgment against his wife where it was clear from the record that she never had been a party to the underlying proceeding. 177 Ariz. at 70, 865 P.2d at 114. We were not persuaded by the fact that she

had "sat through the arbitration hearing" and "may have assisted in presenting [her husband's] case." *Id.* Rather, the spouse was entitled to "a full opportunity to contest . . . liability" in a subsequent action against her as a named defendant in order to satisfy the strictures of due process. *Id.* at 71, 865 P.2d at 115. We thus agree with MCA that the trial court was precluded from asserting jurisdiction over it when there had been no service of process in the underlying action or a full opportunity to contest the allegations against it.

¶16 Enterprise contends, however, that the trial court's order nevertheless was sanctioned by its authority over the actions of the receiver. *See Mashni v. Foster ex rel. Cnty. of Maricopa*, 234 Ariz. 522, ¶ 17, 323 P.3d 1173, 1178 (App. 2014) (receiver's authority derived "'solely from the act of the court'"; receiver is "'subject of its order only'"), *quoting Sawyer v. Ellis*, 37 Ariz. 443, 448, 295 P. at 322, 324 (1931); *Cauble v. Osselaer*, 150 Ariz. 256, 258, 722 P.2d 983, 985 (App. 1986) (fixing of receiver's fee within court's discretion). This argument rests on the court's finding that MCA served as court-appointed receiver — a determination we review for clear error. *See Mashni*, 234 Ariz. 522, ¶ 17, 323 P.3d at 1178 (interpretation of appointment order question of fact); *Gravel Res. of Ariz. v. Hills*, 217 Ariz. 33, ¶ 14, 170 P.3d 282, 287 (App. 2007) (appellate court will affirm factual findings unless clearly contrary to evidence).

¶17 As noted above, the trial court's appointment order states: "It is hereby ordered, adjudged and decreed that . . . Robert Itkin of MCA Financial Group, Ltd., is hereby appointed Receiver." In contrast, the court's order designating Resolute as receiver reads: "It is hereby ordered, adjudged and decreed that . . . Resolute Commercial Services, LLC, acting by and through its principal, Jeremiah Foster, is hereby appointed Receiver in this action." Moreover, the oath of receiver was signed "Robert J. Itkin," with no reference to MCA. *See Focus Point Props., LLC v. Johnson*, 689 Ariz. Adv. Rep. 4, ¶¶ 32-33 (Ct. App. June 19, 2014) (relying on signature block as evidence of capacity in which signator bound); *Ferrarell v. Robinson*, 11 Ariz. App. 473, 475, 465 P.2d 610, 612 (App. 1970) (same).

**¶18**    On this record, we cannot conclude that Itkin was appointed receiver in conjunction with MCA.  Had that been the case, Enterprise would have had to amend the order of appointment when Itkin left MCA to join Simon Consulting Group, LLC, just as it did when Resolute later was appointed to replace Itkin.  *See Sawyer*, 37 Ariz. 443, 448, 295 P. 322, 324 (receiver's authority "derived solely from the act of the court appointing him").  Instead, Enterprise merely submitted a "Notice of Receiver's Change of Firm" that listed his new mailing address.  Indeed, even Enterprise acknowledges that MCA's contention regarding the identity of the receiver is "true in a very technical sense," echoing the position it took in correspondence immediately before Itkin's departure from MCA: "the receiver is in the name of the individual (Rob[ert Itkin]) not the company (MCA)."  Consequently, because the evidence in the record contravenes the trial court's finding on this point, we cannot uphold its order requiring MCA to disgorge compensation on this ground.[9]

**¶19**    Finally, we reject Enterprise's argument that an agency relationship between Itkin and MCA operated to confer personal jurisdiction over MCA.  We are unaware of any authority for the proposition that a plaintiff can expand the trial court's jurisdiction merely by alleging an agency relationship between a court-appointed receiver and an unserved third party.  Were this the case, the strictures of due process could be avoided altogether to reach the assets of a stranger to the underlying proceeding without providing

---

[9]We recognize that the schedule of fees attached to the receivership order and the bond filed by MCA may have caused confusion regarding the receiver's identity.  Nevertheless, the undisputed facts in the record do not reasonably support the trial court's ruling.  *See Davis v. Zlatos*, 211 Ariz. 519, ¶ 18, 123 P.3d 1156, 1161 (App. 2005) (findings clearly erroneous if they lack evidence that "'permit[s] a reasonable person to reach the trial court's result'"), *quoting In re United States Currency in the Amount of $26,980.00*, 199 Ariz. 291, ¶ 9, 18 P.3d 85, 89 (App. 2000).

such third party either notice or an opportunity to be heard.[10]  This notion is flatly inconsistent with established jurisprudence on the limits of jurisdiction; as a result, it cannot serve to support the challenged ruling.  *Cf. Planning Grp. of Scottsdale, L.L.C. v. Lake Mathews Mineral Props., Ltd.*, 226 Ariz. 262, ¶ 14, 246 P.3d 343, 347 (2011) (exercise of jurisdiction must comport with "'traditional notions of fair play and substantial justice'"), *quoting Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945).

### Attorney Fees and Costs

**¶20**        MCA has requested an award of its attorney fees and costs for both the trial court action and this appeal pursuant to A.R.S. § 12-341.01(A), which governs recovery of attorney fees in an "action arising out of a contract."  MCA contends "its fees for its work as a vendor were received in accordance with its contract directly paid by Enterprise."  Despite this assertion, MCA has not identified such a contract nor does it appear in the record.  More importantly, neither the disgorgement motion nor the resulting order was predicated on any contractual considerations but rather on the court's mistaken view of MCA as the receiver in the proceeding.  *See Cauble v. Osselaer*, 150 Ariz. at 260-61, 722 P.2d at 987-89 (claim for reduction in receivership charges does not "arise out of a contract").  Thus, any agreement relating to MCA's services was not the "essential basis" of the disgorgement action.  *See Chaurasia v. Gen. Motors Corp.*, 212 Ariz. 18, ¶ 25, 126 P.3d 165, 173

---

[10]Although an agency relationship might provide, in part, a basis for the exercise of jurisdiction, service of process is the mechanism by which the court acquires the power to enforce a judgment.  *S.E.C. v. Ross*, 504 F.3d 1130, 1138 (9th Cir. 2007) ("The familiar 'minimum contacts' test, coupled with statutory authorization, provides a basis for an exercise of jurisdiction, but '[s]ervice of process is the mechanism by which the court [actually] acquires' the power to enforce a judgment against the defendant's person or property."), *quoting 2,164 Watches, More or Less Bearing a Registered Trademark of Guess?, Inc.*, 366 F.3d at 771.  Here, it is unknown what would have transpired had MCA been made a party and we express no opinion on it.

(App. 2006); *see also Lewin v. Miller Wagner & Co., Ltd.*, 151 Ariz. 29, 37, 725 P.2d 736, 744 (1986) (mere existence of contract does not justify fees award where contract only "peripherally involved in a cause of action"); *In re Larry's Apartment, L.L.C.*, 249 F.3d 832, 836 (9th Cir. 2001) (where contract "merely somewhere within the factual background," fees under § 12–341.01(A) not awardable).[11] Accordingly, we deny MCA's attorney fees request. But, as the prevailing party on appeal, MCA is entitled to a cost award upon compliance with Rule 21. *See* A.R.S. § 12-341; *Assyia v. State Farm Mut. Auto. Ins. Co.*, 229 Ariz. 216, ¶ 32, 273 P.3d 668, 675 (App. 2012) (cost award mandatory in favor of successful party).

**Disposition**

¶21 For all of the foregoing reasons, the trial court's order requiring MCA to disgorge $118,185.93 in fees is vacated.

---

[11]We are not asked to decide and express no opinion as to whether a fees award pursuant to § 12-341.01 may be available in a receivership action.

14