NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

---

ROBERT BROWNSBERGER, *Plaintiff/Appellee,*

*v.*

DORIAN LANGE, et al., *Defendants/Appellees.*

---

PRISM HOLDINGS, LLC, et al., *Appellants.*

No. 1 CA-CV 23-0773

FILED 09-03-2024

---

Appeal from the Superior Court in Maricopa County
No. CV2022-015284
The Honorable Joan M. Sinclair, Judge

**AFFIRMED**

---

COUNSEL

Hinshaw & Culbertson LLP, Phoenix
By Bradley L. Dunn
*Counsel for Non-Parties/Appellants*

Snell & Wilmer L.L.P., Phoenix
By Benjamin W. Reeves, Molly Kjartanson
*Counsel for Appellee/Receiver Donald Hulke/Legion Financial, LLC*

---

## MEMORANDUM DECISION

Presiding Judge Brian Y. Furuya delivered the decision of the Court, in which Judge James B. Morse Jr. and Judge David D. Weinzweig joined.

---

**F U R U Y A**, Judge:

¶1        Prism Holdings, LLC, dba ERC Credit USA ("Prism") and its representatives Vincent Porter and Michael Simonovic (collectively "Representatives"), challenge the superior court's exercise of jurisdiction in ordering them to remit certain funds to the receivership estate of Doctor Robert Brownsberger and Dorian Lange ("Receivership Estate"). For the following reasons, we affirm.

### FACTS AND PROCEDURAL HISTORY

¶2        Prism is a Wyoming limited liability company that markets and sells tax services to businesses in Arizona and across the nation. Two Arizona residents contracted with Prism for its services: Brownsberger, a physician, and Lange, a pharmacist. Together, they co-owned several medical companies in Yavapai County, Arizona.

¶3        Prism specializes in prompting business customers to collect refundable tax credits issued by the Internal Revenue Service called Employee Retention Credits ("ERC").[1] As payment for its services, Prism charges an up-front fee and further claims a percentage of any amount refunded to clients before forwarding the remaining funds to them. Simonovic is a principal of Prism. Porter was paid a portion of the ERC funds in this matter and sent correspondence on behalf of Prism.

¶4        In August 2022, Brownsberger hired Prism to determine his practice's ERC eligibility. Their agreement was reduced to a contract, which stated that in exchange for acting as a paid preparer for Brownsberger in submitting ERC applications to the IRS, Prism would receive the ERC funds on Brownsberger's behalf and retain twenty percent of ERC funds received

---

[1]      Internal Revenue Service, Employee Retention Credit, www.irs.gov/coronavirus/employee-retention-credit (last visited July 2, 2024).

from the IRS. Prism found Brownsberger's and Lange's businesses to be eligible for ERCs and submitted applications on their behalf to the IRS.

¶5          In December 2022, the superior court entered an order appointing a Receiver to manage the estate of Brownsberger and Lange. The receivership order gave the Receiver broad authority to maintain the Receivership Estate, granting the Receiver "all rights to payment from any source" and empowering the Receiver to "make demand for and collection of all amounts that may be due" to the Receivership Estate. The Receiver also has the right to "recover all amounts due to the Receivership Estate or the Entities," the right to "take possession of all . . . Receivership Property," and "all rights to payment from any source . . . whether such accounts are maintained by the Entities or any other person or entity."

¶6          In February 2023, the Receiver learned of Prism's involvement with Brownsberger and Lange and contacted Prism, requesting all documentation submitted to the IRS for ERCs. Despite warnings about the ramifications of withholding the ERC checks, Prism ignored the Receiver's communications. After multiple failed attempts at contacting Prism, the Receiver hired counsel who sent a formal demand for Simonovic to turn over both the funds and records.

¶7          Prism eventually sent the Receiver four out of six ERC checks, totaling $859,079.47. Prism informed the Receiver it withheld two checks because it believed its contract entitled it to payment of twenty percent of the ERC funds. It deposited two checks totaling $349,405.34 with an escrow attorney who distributed $241,696.36 to Prism and the remainder to the Receivership Estate. After further demands for the remaining funds failed, the Receiver moved the court to compel Prism to turn over the funds to the Receivership Estate. Prism contested the motion, arguing, among other things, that Arizona's courts lacked jurisdiction to compel out-of-state non-parties to return the funds.

¶8          The court found it had jurisdiction over Prism because (1) Prism submitted a claim to the Receiver that it owned a portion of the ERC funds, thereby submitting itself to the Receiver's jurisdiction, and (2) Prism established sufficient minimum contacts with Arizona when it did business in Arizona. Prism moved for reconsideration, which the court denied before ordering Prism to turn over the ERC funds to the Receivership Estate.

¶9          We have jurisdiction over the timely appeal pursuant to Article 6, Section 9 of the Arizona Constitution and Arizona Revised Statute ("A.R.S.") § 12-2101(A)(1).

## DISCUSSION

¶10        The sole question on appeal is whether the superior court has personal jurisdiction over Prism. Our review is de novo. *Hoag v. French*, 238 Ariz. 118, 122 ¶ 17 (2015).

¶11        State courts may exercise personal jurisdiction under appropriate circumstances. *Wal-Mart Stores, Inc. v. LeMaire*, 242 Ariz. 357, 359 ¶ 4 (App. 2017). Arizona law permits courts to "exercise personal jurisdiction to the maximum extent allowed by the United States Constitution." *Planning Grp. of Scottsdale, L.L.C. v. Lake Mathews Min. Props., Ltd.*, 226 Ariz. 262, 265 ¶ 12 (2011); *see also* Ariz. R. Civ. P. 4.2(a). Such personal jurisdiction may be general or specific, *Planning Grp.*, 226 Ariz. at 265 ¶ 13, and the Constitution permits the exercise of specific personal jurisdiction over a nonresident defendant that has sufficient "minimum contacts" with the forum so that "the maintenance of the suit does not offend traditional notions of fair play and substantial justice," *Walden v. Fiore*, 571 U.S. 277, 283 (2014) (quotation omitted). We analyze a party's contacts with the forum state in totality, not isolation. *Planning Grp.*, 226 Ariz. at 269 ¶ 29.

¶12        Prism and its Representatives argue the court improperly exercised both general and specific jurisdiction over them. They also argue their twenty percent fee from the ERC funds is not property of the Receivership Estate, precluding the court from exercising jurisdiction over the money. Because we conclude the court properly exercised specific jurisdiction over Prism and its Representatives, it had sufficient personal jurisdiction and we need not analyze whether general jurisdiction applies. *See KZPZ Broad., Inc. v. Black Canyon City Concerned Citizens*, 199 Ariz. 30, 38 ¶¶ 28–29 (App. 2000) (finding dispositive holding on one issue renders it unnecessary to address other issues).

## I.    The Court Has Specific Jurisdiction Over Prism and Its Representatives.

¶13        Specific jurisdiction requires "(1) purposeful conduct by the defendant targeting the forum, rather than accidental or casual contacts or those brought by the plaintiff's unilateral acts, (2) a nexus between those contacts and the claims asserted, and (3) that exercise of jurisdiction would be reasonable." *Beverage v. Pullman & Comley, LLC*, 232 Ariz. 414, 417 ¶ 9 (App. 2013).

¶14        On this record, Prism's and its Representatives' conduct, when considered in its totality, satisfies each factor. As the court noted in

its order, Prism and its Representatives purposefully targeted Arizona when Prism engaged in business with Brownsberger and Lange, both Arizona residents. Prism charged an up-front fee for its services, which Brownsberger paid. Under the contract, Prism acted as a paid preparer for Brownsberger by applying for ERCs on his behalf. Prism and its employees, including Simonovic, communicated repeatedly with Brownsberger, and later the Arizona-appointed Receiver, about the business of the parties' contract, including Prism's receipt of the ERC checks and its assertion that it was owed a portion of those funds. Moreover, Porter, after receiving a portion of the funds at issue, mailed the ERC checks to the Receiver, acknowledging the Receiver's authority to act for Brownsberger and Lange.

¶15        These contacts were purposefully directed at Arizona residents, dealt with subject matter centered in Arizona (i.e., ERCs belonging to Arizona businesses), were directly related to this matter, and were sufficient to support the court's reasonable exercise of jurisdiction. *See Beverage*, 232 Ariz. at 419–20 ¶¶ 21–22 (finding specific jurisdiction over an out-of-state law firm that entered an attorney-client relationship with an Arizona client, drafted an opinion letter for the client, accepted significant payment from the client, and had repeated communications with the client); *Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*, 592 U.S. 351, 359 (2021) (observing that entering into a contractual relationship that is "centered" in the forum state may establish sufficient jurisdictional contacts).

¶16        Relying on *MCA Fin. Grp., Ltd. v. Enter. Bank & Tr.*, 236 Ariz. 490 (App. 2014), Prism and its Representatives assert the trial court improperly exercised personal jurisdiction because they are non-parties to the original petition to appoint a Receiver. But *MCA* is inapposite. In *MCA*, we held a third party was not subject to the court's jurisdiction in a receiver's disgorgement proceeding because it was "never served with process, or named in either [the] lawsuit, the receivership proceedings, *or* the disgorgement motion as a party against whom relief was sought." *Id.* at 495 ¶ 12 (emphasis added). Such is not the case here.

¶17        True, Prism and its Representatives were not served or named in the original receivership proceeding because the Receiver had not yet learned of their dealings with Brownsberger. Once aware that Prism had applied for ERCs on Brownsberger's and Lange's behalf, the Receiver contacted Prism and its Representatives seeking all relevant documentation submitted to the IRS for that purpose. After multiple communications through which Prism and its Representatives delayed providing requested documents and refused to remit all ERC funds to the Receiver, the Receiver

filed the motion to reclaim those funds, naming Prism and its Representatives as subjects of the motion and serving process on them. Thus, Prism and its Representatives had actual knowledge of the receivership proceeding, of the Receiver's demands for the ERC funds, and of the motion for turnover. They also participated directly in the proceedings on the motion. These facts stand in meaningful contrast with the third party in *MCA*, which had no notice of the proceedings at *any* stage. *Id.* Here, Prism and its Representatives were properly named and served in connection with the Receiver's motion.

## II.     The ERC Funds Are Receivership Property.

**¶18**          Because the superior court has jurisdiction over Prism and its Representatives, the ERC funds must be turned over to the Receivership Estate. Statute defines "receivership property" as "the property of an owner that is described in the order appointing a receiver or a subsequent order." A.R.S. § 33-2601(13). Under the Receivership order, as well as under A.R.S. §§ 33-2610(A)(2) and -2611(A)(1), the Receiver has the authority and duty to seek possession of the ERC funds.

**¶19**          Prism and its Representatives concede a "receiver no doubt has the rights of those whose interest the receiver represents." Nonetheless, they maintain—without authority—that the contract between Brownsberger and Prism permits them to retain ERC funds issued by the IRS. But this position ignores that the IRS disbursed all ERC checks in Brownsberger's name. All of the ERC funds are property of the Receivership Estate and must be remitted to the Receiver. As the superior court noted, this case is not a dispute of contract. Prism may still seek its fee by filing an application. But it may not withhold possession of the ERC funds in the meantime.

## CONCLUSION

**¶20**          We affirm.

